JONES v. DAVIS.

1. Whilst an execution issued from the Circuit Court was in the sheriff's hands, a judgment was obtained against the defendant, and his property levied on and sold by a constable, under an execution issued thereon—held, that the lien created by the delivery of the execution to the sheriff was, under the act of 1828, divested by the levy of the constable.

2. Where a sheriff or other officer in the absence of fraud on the part of the purchaser, sells more property than is necessary to satisfy an execution, the sale, as to the excess is not absolutely void; though under *some circumstances*, it may be set aside.

3. Where an officer is guilty of a breach of good faith in making an excessive levy, or sale under execution, he is liable to an action by the defendant in execution; and perhaps, a party who has been prevented from obtaining satisfaction of a judgment in his favor, may maintain an action against him.

4. Where proceedings before a justice of the peace are evidence in a cause, it is not necessary to produce the original papers, but sworn copies compared by any competent person to whom the justice will intrust the originals for that purpose, are admissible.

5. If a charge to the jury is too broad abstractedly considered, the revising Court will refer to the prayer, in answer to which, it was given, and the evidence in the cause to ascertain if it be objectionable.

This was a proceeding under the statute, in the Circuit Court of Tuscaloosa, to try the right to some cotton, which was levied on by a writ of *fieri facias*, issued from that Court, at the suit of the plaintiff, against the goods and chattels, &c., of William Carroll. The cotton was claimed by the defendant in error, and an issue made up and submitted to the jury for the trial of the question, whether the property was liable to the plaintiff's execution.

On the trial the plaintiff excepted to the ruling of the presiding Judge, and her exceptions are now certified to this Court as part of the record. It appears that the plaintiff's execution was delivered to the sheriff on the 2d October, 1840, and on the 23d. February, 1841, was levied on one thousand eight hundred and ninety pounds of ginned cotton, the property in dispute, being the crop of the defendant in execution for the year 1840.

. The defendant in error offered as evidence two papers purporting to be executions issued by a justice of the peace, in his favor, against Carroll, both dated 27th January, 1841. One professing to be founded on a · judgment of the 9th of that month, and the other on a judgment of the 21st,—the first for thirty-four and fifty-nine one hundredths dollars, besides one and thirty-one and one-fourth one hundredths dollars costs, the latter for forty-nine and fifty-nine one hundredths dollars, besides one and thirty-one and one-fourth one hundredths dollars costs. He then proposed to prove by the constable levying these executions, that they were genuine; whereupon, the plaintiff objected to the admission of the executions, unless the judgments on which they were founded were first produced; but her objection was overruled, and thereupon she excepted.

The defendant then proposed to read to the jury, a paper purporting to be a transcript, from the docket of the justice of the peace, who rendered the judgment, showing that the warrants in both cases, issued on the 9th of January, 1841, and, were returnable on the 21st of that month, and that judgments were then confessed by Carroll for the amount stated in the executions. The constable levying the executions stated, that he had compared the paper offered with the justice's docket

and that the same was a correct transcript. To the introduction of this evidence the plaintiff also objected; but her objection was overruled, and thereupon she excepted.

It was proved, that the levies by the constable were made on the 29th January, 1841, on " the rise of seven thousand pounds of seed cotton," (the same now in controversy,) and being duly advertised, was sold to the defendant, " at two dollars and some cents per hundred ;" all of which proceedings before the justice and by the constable, took place while the plaintiff's execution was in the sheriff's hands. Evidence was offered to show a fraudulent combination between the defendant and Carroll; but evidence to repel the charge was offered by the defendant.

The Court charged the jury, that although, all the proceedings before the justice and by the constable, took place while the plaintiff's execution was in the sheriff's hands ; yet, if the levy and sale of the constable was made before the levy of the sheriff, under the statute of 1828, it divested the lien created by the delivery of the plaintiff's execution to the sheriff.

The Court was asked to charge the jury that, if more cotton was sold by the constable, than was sufficient to satisfy the executions in his hands, the overplus was sold without authority, and was liable to the plaintiff's execution. The Court refused so to charge ; but charged the jury, the purchaser at the constable's sale was not bound to inquire into the extent of his authority, and that he acquired a good title to all the cotton he purchased at the sale.

To the refusals to charge the jury and to the charges given, the plaintiff excepted, and a verdict and judgment being rendered against her, she has prosecuted a writ of error to this Court.

MOODY, for the plaintiff.
MARTIN, contra.

COLLIER, C. J.—The questions presented by the assignment of errors, arise upon the bill of exceptions. It is insisted :

1. The lien created by the delivery of the plaintiff's execu-

tion to the sheriff, could not be defeated by the subsequent levy of the executions issued by the justice of the peace.

2. That the excess of cotton beyond what was necessary to satisfy the executions, at the suit of the defendant, was sold without the authority of law, and should be condemned to the satisfaction of the plaintiff's execution.

3. The executions issued by the justice of the peace, were inadmissible evidence in themselves.

4. The examined copies of the proceedings before the justice, though verified by the oath of a witness, were not sufficiently authenticated to make them evidence.

*First.* The decision of this point must depend upon the construction of the first section of the act of 1828, "relative to the satisfaction of executions." That section enacts, that executions issued by a justice of the peace, shall operate as a lien on the property of the defendant, from the time of the levy and not sooner; and that the lien so created by the levy of an execution by a constable, shall not be overreached by the levy of any execution in the hands of the sheriff, not previously levied. [Aik. Dig. 166.]

It is argued for the plaintiff, notwithstanding the directness of the terms of the act cited, that as a lien attached in virtue of her execution, it must continue to operate until the execution lost its vitality, that the legislature cannot be supposed to have intended to take from an execution a lien, which they had previously declared should follow it, where the party entitled, was in no default. To sustain this argument, the case of Harrison v. Marshall, 6 Por. Rep. 65, has been cited. In that case it appears, that a lien had attached upon a *fieri facias*, issuing from the Circuit Court in November, 1827, and the levy was made by the constable in May, 1828—after the passage of the act cited. The Court considered, that the right of the plaintiff having previously vested to have his execution satisfied from the property against which it issued, was not intended to be interfered with, by the act of 1828. This case then, does not decide the question which the plaintiff has supposed.

The language employed by the legislature seems to us to be so direct as not to admit of controversy. It explicitly declares

that the levy of an execution by a constable shall not be over-reached by the lien of any execution in the hands of the she-riff not previously levied. The case stated in the bill of excep-tions, is that which is provided for, and the instruction of the Circuit Judge to the jury, is but the mere echo of the statute.

*Second.* It is the duty of a sheriff or other officer, to sell no more property than is necessary to satisfy the execution with costs, where the property levied on, is susceptible of division. In Tiernan v. Wilson, 6 Johns. Ch. Rep. 414, Chancellor Kent says, The proposition is not to be disputed, that a sheriff ought not to sell at one time, more of the defendant's property than a sound judgment would dictate to be sufficient to satisfy the demand, provided the part selected can be conveniently and reasonably detached from the residue of the property, and sold separately. To the same effect, see 8 Johns. Rep. 333; 18 Johns. Rep. 362, and Woods v. Monell, 1 Johns. Ch. Rep. 502, and in Wheeler & McCurdy v. Kennedy, 1 Alabama Rep. N. S. 292, this Court held a similar doctrine.

But if an officer abuses his trust in this respect, the sale is not in the absence of fraud on the part of the purchaser, abso-lutely void as to the excess of the property sold. True, under some circumstances, it may be set aside upon motion to the Court, or by suit in equity; but until this is done, the title of the honest purchaser must be respected. (The Mobile Cotton Press, &c. v. Moore & Magee, 9 Porter's Rep. 679; 1 Johns. Ch. Rep, 502; 6 Johns. Ch. Rep. 411.]

In Kentucky it has been held, that where more land has been sold than was necessary to satisfy the execution, in the absence of all circumstances to justify it, the sale was void. (Patterson v. Carneal's heirs, 3 Marsh. Rep. 619; Pepper v. The Commonwealth, for, &c., 6 Mon. Rep. 27. But these cas-es depend upon a statute of that State, regulating the sale of lands under execution. (Addison et al. v. Crow et al., 5 Dana. Rep. 277.]

Where an officer is guilty of a breach of good faith in mak-ing an excessive levy, or sale under execution, he is liable in damages to the defendant in execution; and we will not say that a party, who has been threby prevented from obtain-ing satisfaction of a *fieri facias*, in his favor, may not main

tain an action against him. That question does not here arise.

*Third and Fourth.* These questions may be considered together. If the defendant was a plaintiff upon the trial of the right, seeking to condemn property levied on, to the satisfaction of his executions, there can be no doubt that the executions would be admissible evidence in the absence of the judgments. That point was determined in Carlton et al. v. King, 1 Stewt. & P. Rep. 472, where executions issued by a justice of the peace had been levied on property claimed by a third person.

If the executions offered by the defendant were inadmissible in themselves, (a question which need not be now decided,) their admission was legalized by the copies of the proceedings before the justice of the peace. The original papers of the justice could not have been required; nor was it necessary that he should have attended himself as a witness to vouch the genuiness of the copies. Sworn copies of such papers are clearly admissible, and these copies may be made and compared by any competent person, to whom the justice will intrust the original for that purpose. [Hamner v. Eddins, 3 Stewt. Rep. 192.)

The suggestion in argument, as to fraud between the defendant and the constable, who levied his executions, does not arise upon the record. All questions of that kind, were closed by the verdict of the jury.

It is supposed, that in the last charge given, the Circuit Judge decided a question of fact, which appropriately pertained to the jury. That charge was evidently intended, as a response to the prayer of the plaintiff. In assuming, that the defendant acquired a good title to all the cotton he purchased at the sale, the Court merely intended to say, that the executions were a sufficient authority for the constable to sell all the cotton, and that the defendant's purchase invested him with a title to all as against the plaintiff.

In every view in which the case has been presented there, is no error, and the judgment of the Circuit Court is, consequently, affirmed.