Wright *v.* Dick *et al.*

No. 13,513.

## WRIGHT *v.* DICK ET AL.

SHERIFF'S SALE.—*Action to Set Aside.—Inadequacy of Price.*—Gross inadequacy of price, coupled with slight additional facts showing fraud irregularity, or any other circumstance which may have operated to prevent the property from bringing its fair value, will avoid a sheriff's sale.

SAME.—*Good-Faith Purchaser.—Irregularities.— Redemption.—Limitation of Action.— Waiver.*—Mere irregularities, such as the failure to levy upon and exhaust the debtor's personal property before resorting to his real estate, or the sale of his real estate in a body when it is susceptible of division and sale in parcels, will not necessarily render a sale void as against a good-faith purchaser. Such irregularities, as a general rule, can only be taken advantage of by an execution defendant, and will be deemed waived if acquiesced in by him during the statutory period of redemption.

SAME.—*Omission to Demand Sheriff's Deed.*—The mere omission of a purchaser to demand a deed from the sheriff at the expiration of the period for redemption, will not ordinarily defeat his absolute and continuous right to a conveyance after that time, where the sale has been properly made, the writ duly returned and a proper record thereof made.

SAME.—*Duty of Sheriff to Sell Personalty.—Presumption.—Burden of Issue.*— Where, instead of selling personal property as required by section 730, R. S. 1881, a tract of real estate worth $1,800 was levied on and sold to satisfy a balance of $20 due on a judgment, such sale is presumptively void because of unfairness and oppression, and the law imposes on the purchaser the burden of showing that he took no advantage of the want of actual notice to the owner of the sale, and that there was no concealment, mistake or misapprehension which induced the owner to omit to redeem within the statutory period.

SAME.—*Equity.—Subsequent Mortgagees and Purchasers.*—In such case, subsequent mortgagees and purchasers of land so sold are equitably entitled to have their lien and rights enforced after the statutory period of redemption, the law presuming that they were misled by the sheriff's failure to perform his statutory duty.

From the Huntington Circuit Court.

*L. M. Ninde, T. G. Smith* and *B. F. Ibach,* for appellant.
*W. H. Trammell,* for appellees.

MITCHELL, J.—The plaintiffs, Dick and Taylor, claiming to be the joint owners of an undivided two-thirds of a particularly described eighty-acre tract of land in Huntington county, and alleging that the defendant, Marshall Wright, was the owner and in possession of the other undivided one-third of the same tract, commenced suit for partition, and to correct an alleged clerical mistake in their deed. The defendant presented various defences by way of answer to the complaint, and he also filed a cross-complaint, in which he claimed title to the entire tract of land. After setting out the facts in detail upon which he predicated his right to the land, and those which he claimed rendered the plaintiffs' title invalid, the defendant, in his cross-complaint, asked as relief, that the deed under which the plaintiffs asserted title might be declared null and void, and that the title to the land might be quieted in him. Issue having been duly joined, the court, after hearing the evidence, found the facts specially, and stated conclusions of law thereon. Waiving intermediate questions, the merits of the case may be disposed of by considering the special finding of facts and the propriety of the conclusions of law stated by the court.

The facts found show that on the 21st day of March, 1876, John Morgan, for and on behalf of Dick and Taylor, recovered a judgment in his own name, in the Huntington Circuit Court, against William and Joseph Ruggles, for $115.50, besides costs. This judgment authorized the sale of property without appraisement, and became a lien on the land described in the complaint, which was owned by Joseph Ruggles. On the day following the entry of judgment an execution was issued, and in the month of June, 1876, the sheriff received, as part payment on the execution, $120, of which sum $103 was applied on the judgment, $13.20 on the original costs and $3.80 on the sheriff's fees on the execution. This writ was returned on the 18th day of October, 1876, unsatisfied. On the same day a second execution was issued, which was returned by order of the plaintiff on the 18th day of

April following, without any attempt having been made to collect the amount due, and with $3.70 additional costs taxed thereon.

On the 19th day of April a third execution was placed. in the sheriff's hands commanding him to collect $13.20, balance of judgment, $1.34 interest, and $5.74 accrued costs. On the 28th day of June, the sheriff, without—so far as appears by his return, which is set out in the special finding—serving the execution on the judgment debtors, or either of them, or without, so far as appears, making any demand of them for property, levied on the lands in controversy as the property of Joseph Ruggles, and, after one advertisement, sold the whole tract to the judgment plaintiff for $36.44, that being the amount claimed as the balance due on the judgment with the accumulated costs. The execution was duly returned with the doings of the sheriff thereon endorsed, and the return was properly recorded by the clerk in the proper record.

It is found that Joseph and William Ruggles both lived in Huntington county at the time of the levy and sale. above mentioned, and that they had personal property of the value of $1,000, subject to execution. It is also found that the eighty-acre tract of land which, with the improvements placed thereon, was at the time of the trial worth $2,500, was sold *in solido*, when it might have been sold in parcels if it had been so offered. The sheriff issued a certificate. of purchase to Morgan in 1877; at the time the land was sold. The latter assigned the certificate to his principals, Dick and Taylor, who, on the 21st day of May, 1883, presented it to the sheriff and obtained from him a deed, under which they claim the undivided two-thirds of the land, that being all the interest which a purchaser at an execution sale could acquire under the law, the debtor being a married man.

The defendant, Wright, claims title from the following source: On the 25th day of April, 1876, about one month after the Morgan judgment became a lien, Joseph Ruggles

Wright *v.* Dick *et al.*

and wife executed a mortgage on the land in dispute, as security for a debt due to Marshall & Dill. This mortgage was afterward, in October, 1877, foreclosed and the property sold in pursuance of the decree of foreclosure for $1,536.63. The purchaser obtained a sheriff's deed in due course. Morgan, who had recovered the judgment above mentioned, and upon which, as has been seen, a small amount remained unpaid at the time the proceedings to foreclose the subsequent mortgage were instituted, was not made a party. Wright, subsequently, in 1881, purchased the land and took a conveyance from the purchaser under the foreclosure sale. The deeds were properly recorded. The defendant purchased in good faith, for full value, went into possession, paid the taxes, and made lasting improvements worth $700, without any actual notice of the plaintiffs' claim, or of the sale on the execution. In March, 1883, before the institution of the suit, the defendant, having become aware of the previous judgment and sale, tendered the plaintiffs the full amount of their purchase-money, with eight per cent. interest from the date of sale, which tender has been kept good, but which the plaintiffs refuse to receive.

Upon the facts found the court stated conclusions of law to the effect that the plaintiffs were the owners in fee simple of the undivided two-thirds of the tract in dispute, and that the defendant owned the undivided one-third, and that there ought to be partition accordingly.

The conclusions of the court proceed upon the theory that the inadequacy of the price paid did not make the sale void; that although the levying upon and sale of the whole tract of land, when it might have been sold in parcels, was such an irregularity as might have subjected the sale to avoidance, in a direct proceeding seasonably instituted for that purpose, yet it did not render the sale void, and the purchaser's right to a sheriff's deed was not affected by his failure to demand a deed for nearly six years after the sale, since the entries of the clerk, showing the return of the execution

with the doings of the sheriff thereon, constituted a record, of which the cross-complainant and his grantors were bound to take notice.

If it were conceded that the several conclusions of law stated by the learned court are unassailable and correct in the abstract, it would not follow that an execution sale should be upheld because each one of a number of defects might be successfully overcome in the absence of the others. For example, it is quite well settled that inadequacy of price alone will not justify the setting aside of a sheriff's sale, which is in other respects unexceptionable and made to a *bona fide* purchaser, unless the disparity between the value of the property sold and the price paid is so enormous as to shock a correct mind.

But the authorities universally agree that gross inadequacy of price, coupled with slight additional facts, showing fraud, irregularity, or any other circumstance, which may have operated to prevent the property from bringing something like its fair value, will avoid a sale. *Fletcher* v. *McGill*, 110 Ind. 395, and cases cited; Rorer Judicial Sales, sections 1086, 1087, 1095; Freeman Ex., section 309.

The law furnishes a creditor with compulsory process to enable him to coerce the collection of his debt, and it prescribes certain methods which are to be pursued in making the collection. A merely irregular use of the process, such as the failure to levy upon and exhaust the debtor's personal property before resorting to his real estate, or the sale of his real estate in a body, when it should have been subdivided and sold in parcels, does not necessarily render the sale void as against a good-faith purchaser. *Nelson* v. *Bronnenburg*, 81 Ind. 193.

Such irregularities, as a general rule, can only be taken advantage of by the execution defendant. *Ayres* v. *Duprey*, 27 Texas, 593 (86 Am. Dec. 657). These may be waived by the debtor, and will be deemed waived if he acquiesces during

the statutory period of redemption. *Lynch* v. *Reese,* 97 Ind. 360; *Johnson* v. *Murray,* 112 Ind. 154.

So the mere omission of the purchaser to demand a deed from the sheriff at the expiration of the period for redemption, will not, ordinarily, defeat his absolute and continuous right to a conveyance after that time, where the sale has been properly made and the writ duly returned, and a proper record thereof made. *Maddux* v. *Watkins,* 88 Ind. 74; *Ringle* v. *First Nat'l Bank,* 107 Ind. 425.

While the process of the court may be employed to coerce the payment of a debt, it can not be resorted to for any other purpose, and while the mere irregular use of an execution may not of itself render the sale of property void, yet where the price is so enormously out of proportion to the value of the property as to suggest that the creditor may have had some ulterior purpose in view, courts are on the alert to discover irregularities in the method of making the sale, and in seizing upon slight irregularities as the ground upon which to declare the sale constructively fraudulent. *Carden* v. *Lane,* 48 Ark. 216 (3 Am. St. R. 228).

If property has been sold at a price at which no man with an honest, correct mind would accept another's property, or for which no sane man owning the property would sell it, even under compulsion, if there were irregularities in the sale, or circumstances indicating fraud or unfairness, the law will ascribe to these irregularities and attending circumstances the effect of bringing about the ruinous sacrifice of the property. *Chamblee* v. *Tarbox,* 27 Texas, 139 (84 Am. Dec. 614).

If the purpose of the creditor in the present case was to collect his debt and nothing more, it is difficult to perceive why one execution after another should have been issued, accumulating costs and occasioning delay, when the debtors had personal property available and subject to execution; nor is it less difficult to perceive the necessity for levying upon an eighty-acre tract of real estate, and incurring the expense, and submitting to the delay, of advertising the sale in

a newspaper, when personal property could have been seized and sold with half the expense and in half the time. Besides, the course which a creditor, desiring nothing more than to make his money in the cheapest and most expeditious manner would naturally have taken, was precisely the course which the law made it his duty to pursue. The statute then, like the one now in force, exempted the debtor's real estate from levy.and sale unless his personal property subject to execution was insufficient, or unless the debtor himself directed the levy and sale to be made otherwise. Section 730, R. S. 1881; section 444, 2 R. S. 1876, p. 210.

Instead of pursuing the method prescribed by the statute and levying his execution upon personal property of the defendants, sufficient in amount to satisfy the small balance remaining unpaid on the judgment, an eighty-acre tract of land, worth not less than $1,800, was levied upon and sold to satisfy a debt, which, stripped of the amount of costs illegally made, was less than twenty dollars. The execution when placed in the hands of the officer became a lien on the personal property of the debtors. The subsequent mortgagees and purchasers of the real estate were equitably entitled to have their lien enforced, and in view of the statute making personal property primarily liable to the satisfaction of the writ, they had a right to presume that it would be enforced as the law directed. It may well be presumed that they were misled by relying upon a due execution of duty by the sheriff, and the judgment creditor, who in this instance was the purchaser.

A sale, such as the one under consideration, being of an amount of property so grossly excessive as to raise a presumption of unfairness and oppression, is presumptively fraudulent, and the law imposes upon the purchaser the burden of showing that he took no advantage of the want of actual notice of the owner, that his property had been sold, and that there was no concealment, nor mistake or misapprehension on the part of the owner, which induced him to

omit to redeem within the statutory period. *Graffam* v. *Burgess*, 117 U. S. 180; *Butler* v. *Haskell*, 4 Des. 651; *Cook* v. *Jenkins*, 30 Iowa, 452; Herman Ex., section 170.

Without delaying to remark upon other special features of the present case, it is sufficient to say the case is fully within the principles and authorities which controlled the judgment in *Fletcher* v. *McGill, supra.*

It follows that upon the facts found by the court the conclusions of law should have been in favor of the cross-complainant.

The judgment is accordingly reversed, with costs, with directions to the court below to restate its conclusions of law, and to render judgment thereon in favor of the appellant in accordance with this opinion.

Filed Jan. 3, 1889; petition for a rehearing overruled March 5, 1889.